UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHAWN J. WALKER*,*

                         Plaintiff,                                   **REPORT AND RECOMMENDATION**

             -against-                                19-CV-1374 (JMA) (ARL)

THE COUNTY OF NASSAU, NASSAU COUNTY,
POLICE OFFICER JOSEPH GIATTINO, NASSAU
COUNTY POLICE DETECTIVE SERGEANT SCALONE
and JOHN DOES #1-10,

                         Defendants.
-------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      The plaintiff, Shawn J. Walker ("Walker"), commenced this civil rights action on March 8, 2019, pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York, asserting, among other things, claims for false arrest and malicious prosecution. Before the Court, on referral from District Judge Azrack, is the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court respectfully recommends that the defendants' motion be granted, in part, and denied, in part.

## BACKGROUND

### A.    The Parties

      The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.

      Walker is a current resident of Suffolk County, New York. Defs.' Rule 56.1 Stmt. ¶ 1. At the time of the incident described below, Walker resided at 99 Roosevelt Avenue in Massapequa, New York. *Id.* ¶ 23. The defendant, Joseph Giattino ("Giattino"), is a police

officer with the Nassau County Police Department.  *Id.* ¶ 2.  The defendant, Salvatore Scalone ("Scalone"), was, at all relevant times, also a police officer with the Nassau County Police Department.  *Id.* ¶ 3.

### B.    The January 29, 2017 Incident

On January 29, 2017, Walker was shot in the left foot and treated at Good Samaritan Hospital ("Good Samaritan") located in West Islip, New York.  *Id.* ¶ 7.  According to the hospital admission note, Walker arrived at Good Samaritan at approximately 2:00 a.m.  Gross Decl. Ex. E., 45:2-46:18.  He advised the hospital staff that he was shot at his residence while taking out the garbage by somebody in a car.  *Id.* 45:2-15, 53:3-10.  Shortly thereafter, the Nassau County Police Department ("NCPD") received a report that there was a gunshot victim being treated for a gunshot wound at Good Samaritan's Emergency Room.  Defs.' Rule 56.1 Stmt. ¶ 5; Pl.'s Rule 56.1 CounterStmt. ¶ 5.  Giattino, Scalone and Detective Daniela Farrell ("Farrell") went to Good Samaritan in order to investigate the shooting.  Defs.' Rule 56.1 Stmt. ¶¶ 8-10.  Farrell testified, at her deposition, that before going to the hospital, she had been advised that the shooting occurred at 99 Roosevelt in Massapequa.  Gross Decl. Ex. D, 28:4-20.

Earlier that night, at approximately 1:10 a.m., a gunshot detection system, known as a "shot spotter," had also gone off in the vicinity of 10 Locust Drive, Amityville, New York, causing the Suffolk County Police Department ("SCPD") to respond to that location.  *Id.* 65:18-21.  10 Locust Drive is the address of the Escape Lounge, a nightclub located in the vicinity of Route 110.  Defs.' Rule 56.1 Stmt. ¶ 12.  Farrell testified that she did not learn about the Amityville shooting until later that day.  Gross Decl. Ex. D, 65:18-66:11.

In any case, Giattino was the first person to interview Walker at the hospital.  Defs.' Rule 56.1 Stmt. ¶ 14.  A short time later, Scalone arrived.  *Id.* ¶ 15.  The parties agree that during

2

Scalone's interview, Walker was in a hospital bed in the triage area.  *Id.* ¶ 16.  However, Walker claims that the entire time he was questioned, while he was awaiting treatment, he was handcuffed to the bed and not allowed to leave the officer's presence.  Pl.'s Rule 56.1 CounterStmt. ¶ 16; Walker Aff. ¶ 21.  The defendants counter that Walker was never in handcuffs or otherwise physically restrained and that the triage area had an open curtain.  Defs.' Rule 56.1 Stmt. ¶ 16.  The defendants also claim that during their respective interviews, Walker was not in police custody, was free to leave, never indicated a desire to discontinue the conversation and never asked for a lawyer.  *Id.* ¶¶ 17-20.  In fact, the defendants insist that any statements Walker made to Giattino and Scalone were entirely voluntary, a fact that Walker vehemently denies.  *Id.* ¶ 21; Pl.'s Rule 56.1 CounterStmt. ¶¶ 19, 21.

Nevertheless, Giattino and Scalone claim that during their respective interviews, Walker repeated that he was shot by an unknown individual in a vehicle while he was taking out the garbage at his residence in Massapequa.  Defs.' Rule 56.1 Stmt. ¶ 25.  Walker stated at his deposition that he does not recall stating that he was shot while taking out the garbage.  Gross Decl. Ex. E. 53:15-17, 54:2-5.  Walker also attests that he was given pain medication while he was awaiting surgery that affected his ability to understand and answer questions.  Walker Aff. ¶ 22.  Still, the defendants contend that based on Walker's statements to Giattino and Scalone, Scalone assigned patrol officers to canvas the neighborhood around Walker's residence.  Defs.' Rule 56.1 Stmt ¶ 26.

The defendants further claim that during Scalone's interview, Walker sent the following text message to his girlfriend:  "left the back door open, get the .40 out of the house and bring it to the street." Defs.' Rule 56.1 Stmt. ¶ 29.  Scalone claims he saw the message when Walker put his cellphone down on the gurney.  *Id.* ¶ 30.  Scalone further claims that when he questioned

Walker about the text message, Walker then admitted that he had not been shot in front of his house. *Id.* ¶ 31-2. Walker denies that he had any communication with his girlfriend while he was in the hospital. Pl.'s Rule 56.1 CounterStmt. ¶ 29. In fact, he claims that he was not permitted to talk to anyone. *Id.* ¶ 16. He also denies that he admitted, at that time, to not having been shot in Massapequa. *Id.* ¶¶ 30-2.

Nonetheless, based on the disputed text message, NCPD officers went to Walker's residence in Massapequa to secure the scene. Defs.' Rule 56.1 Stmt. ¶ 33. The officers claim that they spoke to Walker's girlfriend when they arrived. *Id.* ¶ 34; Gross Decl. Exs. G, H. According to Farrell, Walker's girlfriend consented to a search of the residence and showed the officers who had arrived a black and red pair of athletic shorts wrapped around a .22 round ammunition storage magazine, which was stuffed into a blue 18-gallon container in the rear yard. Gross Decl., Ex. D 45:10-7; 47:8-10; 51:11-52:5, 53:11-54:2.[1] Walker's girlfriend also completed a written statement that provided:

> I was home when I received a text from my boyfriend, Shawn Walker, to get rid of the .40. It was not in my house that long. I know about it but I never saw a gun for it so I didn't know it was illegal until he told me to get rid of it. I wrapped it into the shorts and stuffed it into a plastic storage container in my backyard. I did not ever think I could get in trouble for this.

*Id.* Ex. L.

Based on these events, the defendants concluded that Walker had falsely reported the location of the shooting and had custody and control of ammunition at his residence. Defs.' Rule 56.1 Stmt. ¶¶ 38, 39. As a result, Walker was placed under arrest at Good Samaritan at

---

[1] The arrest report describes the shell that was located as a .22 not a .40. Gross Decl., Ex. D 53:11-54:2

approximately 5:00 a.m.  Gross Decl. Ex. D. 69:6-70:4; Ex. L.[2]  Walker's hospital records reflect

that, at some point later in the morning, he advised hospital staff that "he was coming out of a

bar and was shot."  Gross Decl. Ex. E. 70:12-13.  Walker does not recall providing this

information to the hospital.  *Id.* 70:15-20.

### C. Walker's Arrest and the Subsequent State Court Proceedings

Walker was initially charged with Falsely Reporting an Incident in the Third Degree and

Criminal Possession of a Weapon in the Third Degree.  Defs.' Rule 56.1 Stmt. ¶ 42; Gross Decl.

Ex. J.  Walker's girlfriend was also arrested.  Defs.' Rule 56.1 Stmt. ¶ 41.  She was charged with

Tampering with Physical Evidence and Criminal Possession of a Weapon in the Third Degree.

*Id.* ¶ 44.

Walker's bail was set at $25,000, which was not met.  *Id.* ¶ 45.  As a result, he was

incarcerated at the Nassau County Correctional Center from February 1, 2017 until December

15, 2017.  *Id.* ¶ 46.  On May 17, 2017, the charge of Criminal Possession of a Weapon in the

Third Degree was reduced from a felony to a misdemeanor.  *Id.* ¶ 47.  The misdemeanor weapon

possession charge was then dismissed.[3]  *Id.* ¶ 48.

Walker filed a motion to dismiss the charge of Falsely Reporting an Incident for facial

insufficiency.  *Id.* ¶ 49.  Among other things, Walker argued that accusatory instrument was

jurisdictionally defective because it incorrectly reflected that the alleged false statement was

made in Nassau County despite the fact that it had been made in Suffolk.  Pl.'s Mem. at 2-3.

Walker further argued that the incident was not subject to the statutory exception to the rule that

---

[2] Walker contends that he was "under arrest" from the moment police first arrived at his emergency room bedside. Pl.'s Rule 56.1 CounterStmt. ¶ 40.
[3] According to the plaintiff, the cell phone and the ammunition, which were last in the hands of the defendants, have disappeared.  Pl.'s Mem. at 3.

defendants should be prosecuted in the county in which the offense occurs. *Id.* Based on that argument, the motion to dismiss was granted with leave to amend on November 16, 2017. Shortly thereafter, on December 12, 2017, the charge was dismissed. *Id.* ¶ 50. Walker was released three days later. Compl. ¶ 21.

## DISCUSSION

### A.    Standard of Law

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc*., 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc*., 95 F.3d 123, 129 (2d Cir. 1996), *cert denied*, 520 U.S. 1228 (1997).

The trial court's responsibility is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]here must exist 'specific facts

showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex,* 477 U.S. at 322).  A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

### B.    False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189, 116 S. Ct. 1676, 134 L. Ed. 2d 779 (1996)(internal citation omitted).  To establish a false arrest claim under New York law, a plaintiff must show that the defendant intentionally confined him without his consent and without justification.  *Id.* (citing *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 313–14, *cert. denied*, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed.2d 257 (1975)).  Whether under federal or state law, "[t]he existence of probable cause to arrest . . . 'is a complete defense to an action for false arrest.'" *Id.* (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (internal citation omitted)).

In general, probable cause to arrest exists when an officer has knowledge or reasonably trustworthy information of facts and circumstances that would warrant the belief by a reasonable person that the person to be arrested has committed or is committing a crime. *Esperanza v. City*

*of New York*, 325 F. Supp. 3d 288, 300 (E.D.N.Y. 2018) (quoting *Weyant*, 101 F.3d at 852).  As such, "'[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)).  However,"[t]he arresting officer 'need only possess enough information to convince a reasonable person that the arrestee committed an offense. . ..'" *Id.* (citing *Brown v. City of New York*, 201 F.Supp.3d 328, 331 (E.D.N.Y. 2016) (citations omitted)).  In fact, "'it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.'" *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 476 (E.D.N.Y. 2016)(citing *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)).  "Rather, as long as probable cause exists to arrest a suspect for some crime, it is an absolute defense to a claim for false arrest." *Id.*

In this case, the defendants contend that they had probable cause to arrest Walker for both offenses.  Specifically, with respect to the first charge - Falsely Reporting an Incident in the Third Degree[4] - the defendants argue that Walker told the officers that he was shot at his home in Massapequa when, in fact, he was shot at a bar in Amityville.  They argue, therefore, that there is "incontrovertible evidence" that Walker gave a false statement to the officers, and thus, probable cause existed to arrest him.  The defendants' argument disregards the key question in this case -

---

[4] Under N.Y. Penal Law § 240.50(2), a person is guilty of falsely reporting an incident in the third degree where: "knowing the information reported, conveyed or circulated to be false or baseless, he or she reports, by word or action, to an official or quasi-official agency or organization having the function of dealing with emergencies involving danger to life or property, an alleged occurrence or impending occurrence of a catastrophe or emergency which did not in fact occur or does not in fact exist."

when did the "arrest" take place. *Esperanza,* 325 F. Supp. 3d at 301 (citing *Posr v. Doherty*, 944 F.2d 91, 99 (2d Cir. 1991)( "'[t]he issue of precisely when an arrest takes place is a question of fact.'").  Although the defendants insist that Walker was not restrained during their interviews and was free to leave the hospital at any time, *see* Defs.' Rule 56.1 Stmt. ¶¶ 16-8, at this stage of the proceedings, the Court cannot ignore the fact that Walker's account of the night in question paints a very different picture.  Walker attests that the police confined him at his bedside during their interrogation.  Walker Aff. ¶¶ 9, 19.  Specifically, he claims he was handcuffed to the hospital bed in the emergency room, unable to leave and repeatedly questioned during the entire time he was awaiting treatment.  *Id.* ¶ 21.

Moreover, by their own account, Giattino and Scalone went to Good Samaritan to investigate a report that they had received from the hospital about a gunshot victim in Massapequa.  *See* Defs.' Rule 56.1 Stmt. ¶¶ 7-8; Gross Decl. Ex. D, 28:4-20.  The hospital admission note confirms that Walker first reported that he was walking to take out the garbage and was shot by somebody in a car.  *See* Gross Decl. Ex. E. 45:13-5, 53:3-14.  The defendants contend that during Scalone's interview, Walker repeated that he had been shot in front of his residence in Massapequa.  *Id.* ¶ 25.  Although Walker's initial account of the shooting was clearly false, the defendants have failed to come forward with any evidence to explain how or when they first determined that Walker was lying about the location of the shooting.  Indeed, Farrell, who was the arresting officer, stated at her deposition, that she did not learn about the Amityville shooting until around the time of the arrest at 5:00 a.m.  Gross Decl. Ex. D, 65:18-66:11.  Walker's hospital records also indicate that he did not report to the hospital staff having

been shot at the bar until 11:44 a.m. the following morning.[5] *See* Gross Decl. Ex. E. 69:2-70:16. Therefore, construing the facts in the light most favorable to Walker, a reasonable jury could find that Walker had been seized before the police had sufficient information about the true location of the shooting. *See Esperanza,* 325 F. Supp. 3d at 301 *(citing California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991) ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement . . ..").

The same timing problem exists with respect to the second charge - Criminal Possession of a Weapon in the Third Degree.[6]  Although there is ample evidence in the record to support a finding that Walker was in possession of a large capacity ammunition feeding device and directed his girlfriend to get rid of it, a question, nonetheless, remains as to whether Walker was already confined when Scalone first read his text message or when Farrell located the ammunition storage magazine at his home.  Gross Decl., Ex. D 45:10-7; 47:8-10; 51:11-52:5. Indeed, Walker maintains that by the time police read the text message, he had already been handcuffed to the bed in the emergency room.  Walker Aff. ¶ 5.  Accordingly, based on the record, the Court is unable to conclude as a matter of law that the defendants had probable cause to arrest Walker.

Nevertheless, Giattino and Scalone may still be immune from liability.  In some instances, "[w]here officers arrest[] a plaintiff without a warrant and without probable cause, the doctrine of qualified immunity can [still] shield them from civil damages if it was *objectively*

---

[5] In their memorandum, the defendants state, that Walker reported to hospital personnel that he was shot in Massapequa. To be clear, the hospital record shown to Walker at his deposition, states "Pt  . . states he was in a bar last evening in Massapequa." Gross Decl. Ex. E. 70:5-10.  The progress note also states the "Pt states he was coming out of bar and was shot." *Id.* 70:12-3. It is unclear why he stated that the bar was located in Massapequa.
[6] As discussed below, this charge was subsequently dropped to a misdemeanor charge.

*reasonable* for the officers to believe they did have probable cause." *See Esperanza,* 325 F. Supp. 3d at 300-1 (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007))(internal citations omitted)(emphasis added). "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id*.

The existence of objective probable cause still depends on the facts and circumstances actually known to officers at the time of the arrest. *Id.* As stated above, in this case, even the defendants' version of the events suggest that everyone involved in Walker's treatment and arrest initially believed that he had been shot in Massapequa. There is nothing in the record to suggest that the police had any reason to think that Walker was involved with the Amityville shooting when they first questioned him. As such, even with respect to "objective probable cause, the timing of Walker's "seizure" in relation to when the police determined the true location of the shooting or uncovered the ammunition remains in question. Thus, a reasonable jury could conclude that Walker was arrested, even briefly, without objective probable cause. Accordingly, the Court cannot find Giattino and Scalone to be immune for liability at this time.

In sum, because the Court finds that there are questions of material fact as to whether probable cause existed to arrest Walker for falsely reporting the incident and criminally possessing the weapon, the undersigned respectfully recommends denying summary judgment on the false arrest claim.[7]

---

[7] Given this determination, that Court need not address the defendants' argument that there was no reason to believe that they were violating Walker's clearly established statutory or constitutional rights when they arrested him from a crime committed in a neighboring jurisdiction.

### C.    False Imprisonment

In the complaint, Walker asserted false arrest and false imprisonment as two independent causes of action.  See ECF No. 1.  However, "false arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion."[8] *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005) (citing *Singer*, 63 F.3d at 118 (2d Cir. 1995) (false arrest and false imprisonment claims are analyzed identically).  As with false arrest, the existence of probable cause to arrest constitutes justification and is a complete defense to an action whether that action is brought under state law or under § 1983.  *See Weyant v. Okst,* 101 F.3d at 852.  But, the question of whether or not probable cause existed cannot be determined as a matter of law unless there is no dispute as to the pertinent events and the knowledge of the officers.  *Id.*  (cited *Singer*, 63 F.3d at 118–19).  As stated above, whether Giattino and Scalone had probable cause to arrest Walker at the point at which he was confined is an issue best left for the jury to decide. Accordingly, the undersigned respectfully recommends that the defendants' motion for summary judgment on the false imprisonment claim be denied.

### D.    Malicious Prosecution

The defendants also contend that they are entitled to summary judgment as to Walker's third cause of action, which asserts a claim for malicious prosecution.  "To succeed on a malicious prosecution claim under § 1983, a plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was

---

[8] Indeed, to establish a claim for false imprisonment under New York law, a plaintiff must also establish that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Weyant*, 101 F.3d at 853 (citing *Broughton*, 37 N.Y.2d at 456; *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992)("The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law.").

terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Weiner v. McKeefery,* 90 F. Supp. 3d 17, 33 (E.D.N.Y. 2015) (citing *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009)). The defendants argue that Walker cannot satisfy these elements because (1) they had no role in the institution of the criminal proceeding, (2) there was probable cause for his prosecution and (3) there is no evidence that they acted with actual malice. The Court will address each of these arguments in turn beginning with the defendants' role in the prosecution.

In some instances, "'once an arrestee is formally charged, the arresting officer is . . . no longer responsible for the prosecution, and the chain of causation between the officer's conduct and the claim for malicious prosecution is broken by the intervening independent actions of the court or prosecutor.'" *Id.* (citing *Thompson v. Sweet,* 194 F. Supp. 2d 97, 102 (N.D.N.Y. 2002) (citing *Townes v. City of New York,* 176 F.3d 138, 147 (2d Cir. 1999)). For example, "[i]f the prosecution relie[s] on independent, untainted information to establish probable cause, a complaining official will not be responsible for the prosecution that follows." *Thagard v. Lauber*, 317 F. Supp. 3d 669, 679 (W.D.N.Y. 2018) (citing *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016)). In this case, the record is insufficiently developed to enable the Court to conclude that a break in the causation chain occurred between the police and the prosecutors sufficient to free the defendants from liability on any claim for malicious initiation of the prosecution. Indeed, based on the evidence currently before the Court, a rational jury could conclude that the district attorney acted entirely on the information provided to it by the arresting officers. As such, the Court cannot grant summary judgment with respect to the malicious prosecution claim based on the defendants' role in the criminal proceedings.

The defendants' probable cause argument, however, has merit.  To begin with, it is important to note that for malicious prosecution purposes, probable cause is assessed "'in light of facts known or reasonably believed at the time the prosecution was initiated . . . the time of plaintiff's arraignment—and not at the time of arrest.'" *Weiner,* 90 F. Supp. 3d at 34 (citing *Drummond v. Castro*, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007)).  In addition, "[f]or malicious prosecution claims, probable cause 'has . . . been described as such facts and circumstances as would lead a reasonable prudent person to believe the plaintiff guilty.'" *Id.* (quoting *Stansbury v. Wertman,* 721 F.3d 84, 95 (2d Cir. 2013)).  Given these distinctions, the Court must re-examine the facts surrounding both charges at the time of Walker's arraignment, which occurred after Walker was transferred from Good Samaritan to the Nassau County Medical Center.  *See* Gross Decl. Ex. E. 61:22-24.

As the Court has explained, by the time Walker was arraigned, Walker had provided conflicting reports to the hospital as to the location of the shooting.  On admission, Walker reported that he was shot at his residence while taking out the garbage.  *Id.* Gross Decl. Ex. E., 45:2-15, 53:3-9.  Nine hours later, Walker stated to the hospital staff that "he was coming out of a bar and was shot." *Id.* 70:12-13.  Although Walker does not recall discussing the location of the shooting with hospital staff, denies "voluntarily" telling the police that he was shot in Massapequa,[9] and claims he was heavily medicated, he never outright denies that he reported to police that he had been shot in front of his home.  It is also undisputed that based on Walker's initial statements to police, Scalone assigned patrol officers to canvas the neighborhood around

---

[9] Walker contends that the police drummed up the false arrest charge to cover up the fact that they lacked jurisdiction to charge him in Suffolk County.  Walker Aff. ¶¶ 7-9.

Walker's residence.  Defs.' Rule 56.1 Stmt. ¶ 26.  Thus, a reasonable jury could certainly find that probable cause existed to prosecute him for providing false information to the police.

Similarly, Walker has not come forward with any evidence to overcome summary judgment with respect to his malicious prosecution claim concerning the criminal possession of a weapon charge.  As noted above, there is ample evidence in the record to support a finding that Walker was in possession of a large capacity ammunition feeding device.  Although Walker denies that he sent a text message to his girlfriend with an instruction to "get the .40 out of the house and bring it to the street" *see* Pl.'s Rule 56.1 CounterStmt. ¶¶ 29-33, it is undisputed that Farrell read the same text message on his girlfriend's phone and uncovered the ammunition storage magazine prior to the arraignment.  Gross Decl., Ex. D 45:10-7; 47:8-10; 51:11-52:5.  On this record, even drawing all reasonable inferences in Walker's favor, the Court finds that probable cause existed to prosecute him for the weapon possession charge.  Accordingly, the undersigned respectfully recommends granting the defendants' motion for summary judgment with respect to the malicious prosecution claim.[10]

## E.    Due Process

In his fourth cause of action, Walker alleges that the defendants violated his right to due process by (1) engaging  in "unconstitutional and tainted interrogation procedures for the purpose of procuring the plaintiff's arrest" and (2) failing to disclose material information favorable to him with respect to the crimes he allegedly committed.  *See* ECF No. 1, Compl. ¶¶ 45-53.  Specifically, Walker contends that the defendants violated his constitutional rights by

---

[10]Given this finding, the Court need not address whether the criminal proceeding was instituted with actual malice.

failing to administer *Miranda* warnings prior to questioning him.  He also alleges that the defendants violated the rules set forth in *Brady v. Maryland* by failing to disclose information favorable to him.  The Court will address each of these arguments.

### 1.    Miranda Warnings

First, without more, Giattino's and Scalone's failure to inform Walker of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), does not give rise to a § 1983 claim.  *See Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 346 (2d Cir. 1998).  The Second Circuit has made clear that while a criminal defendant has a constitutional right not to have a coerced statement used against him, a defendant does not have a constitutional right to receive *Miranda* warnings.  *Id.* (*citing New York v. Quarles,* 467 U.S. 649, 654, 104 S. Ct. 2626, 81 L.Ed.2d 550 (1984)).  In this case, Walker was interrogated at his hospital bedside and the defendants admittedly never advised him of his *Miranda* rights before doing so.  Walker Aff. ¶ 19.  However, the information obtained by the police during that interrogation was never used against Walker at trial.  *See London v. Nassau Cnty. Dist. Attorney's Off.*, No. 20-CV-3988(JS)(AKT), 2020 WL 7699644, at *6 (E.D.N.Y. Dec. 28, 2020) (citing *Chavez v. Martinez,* 538 U.S. 760, 767, 123 S. Ct. 1994, 2001 (2003) (The privilege against self-incrimination guaranteed by the Fifth Amendment is a trial right)).  This is so because Walker was never tried.  Accordingly, Walker's due process claim based on the tainted interrogation is not plausible and the undersigned respectfully recommends that to the extend his due process claim is based on the failure to give Miranda warnings, that claim be dismissed.

### 2.    Brady Material

As stated above, Walker also alleges in the complaint that his due process rights were violated because the defendants failed to disclose information favorable to him in violation of

*Brady v. Maryland*. *See* Compl. ¶ 45-48. "'There are three components of a true *Brady*

violation: The evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; that evidence must have been suppressed by the State,

either willfully or inadvertently; and prejudice must have ensued.'" *Poventud v. City of New*

*York,* 750 F.3d 121, 133 (2d Cir. 2014) (quoting *United States v. Rivas*, 377 F.3d 195, 199 (2d

Cir. 2004)). With respect to the third component, a *Brady* claim can only accrue when there has

been an adjudication of guilt. *Reich v. City of New York,* 2021 U.S. Dist. LEXIS 137948, *28, n.

12 (E.D.N.Y. July 23, 2021), report and recommendation adopted, 2021 WL 5783382 (E.D.N.Y.

Dec. 7, 2021), appeal dismissed, No. 22-211, 2022 WL 3020931 (2d Cir. July 5, 2022). Without

this, a plaintiff cannot be said to be prejudiced. In this case, there was no adjudication of guilt

because the charges were dismissed before trial. *See id.* (citing *McCune v. City of Grand Rapids*,

842 F.2d 903, 907 (6th Cir. 1988) (no Brady violation where charges were dismissed before

trial)). Accordingly, to the extent Walker relies on the failure of the defendants to disclose

favorable information to support his due process claim, the undersigned also recommends that

the claim be dismissed.

### F.    Malicious Abuse of Process

Within the body of his due process claim, Walker has included several statements, which

the defendants have interpreted as a separate claim for malicious abuse of process. *See* Compl.

¶¶ 49-52. To establish a malicious abuse of process claim, a plaintiff must show that the

defendant has (1) employed legal process to compel the performance or forbearance of some act

(2) with intent to do harm without excuse or justification, (3) in order to obtain a collateral

objective that is outside the legitimate ends of the process. *Gonzalez v. United States*, No. 16-

CV-1494(KAM), 2018 WL 1597384, at *14 (E.D.N.Y. Mar. 31, 2018) (citing *Savino v. City of*

*New York*, 331 F.3d 63, 76 (2d Cir. 2003)).  Walker's abuse of process claim rests entirely on the fact that the defendants arrested him, which ultimately led to the charges brought against him by the district attorney.  Indeed, Walker has not presented a shred of evidence to establish that the defendants acted with the intent to do harm.  Nor has he offered anything more than a conclusory allegation that the defendants were seeking a collateral objective outside the legitimate ends of the lawful process.  Accordingly, the undersigned respectfully recommends that the abuse of process claim be dismissed

## G.    State Law Claims

Walker has also asserted four state law claims, three of which mirror his section 1983 claims for false arrest, false imprisonment and malicious prosecution.  Compl. ¶¶ 54-71.  His fourth claim is for respondeat superior/vicarious liability.  *Id.* ¶¶ 72-5.  The defendants contend that the state law claims are time barred and should also be dismissed on the merits.

As a general rule, a one-year statute of limitations applies to state law claims for false arrest, false imprisonment and malicious prosecution.  *See Berlin v. Jetblue Airways Corp.*, 436 F. Supp. 3d 550, 565 (E.D.N.Y. 2020) (collecting cases); *TADCO Const. Corp. v. Dormitory Auth. of State of N.Y.*, 700 F. Supp. 2d 253, 273 (E.D.N.Y. 2010) ("New York's one-year statute of limitations does indeed govern claims for false arrest, malicious prosecution and abuse of process.").  However, as the defendants acknowledge, N.Y. Gen. Municipal Law 50-i creates an exception to the one year statute of limitations for intentional torts committed by municipalities and municipal employees.  N.Y. Gen. Mun. L. § 50–i (1)(a).  Therefore, under § 50–i, Walker's state law false arrest and false imprisonment claims had to be brought within one year and ninety-days from the date those claims accrued, that being, the date Walker was released from custody.  *Wharton v. Cnty. of Nassau*, No. 07-CV-2137 RRM ETB, 2010 WL 3749077, at *3

18

(E.D.N.Y. Sept. 20, 2010) (false arrest claim accrues on date plaintiff was released from police custody).  Walker was released from custody on December 15, 2017, and this lawsuit was commenced on March 8, 2019, one week before the deadline for doing so.  Thus, the undersigned finds the defendants' statute of limitations argument with respect to these claims to be unavailing.

The same holds true for the defendants' statute of limitations argument with respect to the state malicious prosecution claim to the extent it is based on the false information charge.  *See id.* at * 10.  "A state law claim for malicious prosecution, . . . accrues on the date the criminal proceeding in question terminated in [the] plaintiff's favor." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 451 (E.D.N.Y. 2015).  Here, the false information charge was dismissed on December 12, 2017.  Defs.' Rule 56.1 Stmt. ¶ 50.  As such, that portion of the malicious prosecution claim was timely.  However, the criminal possession of a weapon charge was dismissed on May 17, 2017, several months before the false information charge was dismissed. *Id.* ¶ 48.  That claim had to be brought by August 15, 2018.  Accordingly, Walker's state law malicious prosecution claim based on the weapons charge is time barred.

The Court turns to the merits of the state law claims.  As discussed above, the factors for assessing the claims of false arrest, false imprisonment and malicious prosecution are the same for claims brought under federal or state law.  *See Weyant*, 101 F.3d at 852 (2d Cir. 1996) (discussing false arrest and false imprisonment); *Gonzalez v. City of Schenectady*, 728 F.3d 129, 155 (2d Cir. 2013) (discussing malicious prosecution).  Accordingly, the Court adopts its prior determination and recommends that the defendants' motion for summary judgment on the state law false arrest and false imprisonment claims be denied but that the defendants' motion for summary judgment with respect to the state malicious prosecution claim be granted

Finally, with respect to the eighth claim for relief, the defendants simply argue that the respondeat superior claim against the County should be dismissed because Giattino and Scalone are entitled to summary judgment on the state-law claims. *See Stevens v. City of New York,* No. 10 Civ. 2172(KBF)(JLC), 2012 WL 5862659, at *4, n.6 (S.D.N.Y. Nov. 14, 2012) (finding "no substantive offense for which the City of New York can be held vicariously liable" upon dismissing state-law claims against individual police officers). Given the undersigned's recommendation to deny the motion to the extent the defendants seek to dismiss the false arrest and false imprisonment claims this argument is unavailing. The Court does agree, however, that Walker cannot maintain a claim for malicious prosecution against the County should the District Court adopt the undersigned's recommendation to dismiss that claim in its entirety. Accordingly, the undersigned respectfully recommends that Walker's respondeat superior claims be limited to the state false arrest and false imprisonment claims.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v.*

*Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated:  Central Islip, New York
        December 12, 2022

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge